UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IBEN GANTT,

    Plaintiff,

        v.                              Civil Action No. 11-1392 (JDB)

RAY MABUS,
Secretary of the Navy,

    Defendant.

## MEMORANDUM OPINION

Plaintiff Iben Gantt brings this action against defendant Ray Mabus, Secretary of the Navy, for discriminatory and retaliatory employment practices under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Now before the Court is the Secretary's motion to dismiss or, in the alternative, for summary judgment. Upon consideration of the record and for the reasons stated below, the Court will grant defendant's motion for summary judgment.

**I.**     **Background**

Gantt was hired in 2003 by the Naval Research Laboratory ("NRL") as a security guard. Compl. ¶ 5 [Docket Entry 1]. Subsequently, he received security clearance, which was then rescinded due to concerns with Gantt's financial situation. Id. ¶ 6. Although he remained at NRL despite having his clearance revoked, in 2005 Gantt was involuntarily transferred to the Navy Yard because he did not have the required security clearance. Id. ¶ 8. Gantt claims that he was eligible to be reconsidered for a Secret security clearance in April 2005, and such clearance was granted in 2006. Id. ¶ 9. The Department of the Navy contacted Gantt in January 2009 and offered him one of two open positions at NRL. Id. ¶ 11. Gantt expressed concern that he would

not be selected because of his prior history with NRL. Id.  According to Gantt, the selection agent had assured him that there would be no problem and that the NRL security manager, Barton Bodt, had approved the appointment. Id.  Gantt would be required to obtain a Top Secret security clearance for the new position. Id. ¶ 12. At the time, Gantt had only a Secret clearance. Id. ¶ 13.  NRL later refused to sponsor Gantt's application for the required clearance, claiming that he had lied on the application for the background investigation.  Id. ¶ 19. Hence, the new job and accompanying promotion were rescinded. Id. ¶ 16.

Gantt, who is black, alleges that NRL's refusal to sponsor his application for a Top Secret clearance was discriminatory, and contends that a white officer had been selected for the promotion and position, and was given the opportunity to apply for a Top Secret security clearance. Id. ¶¶ 15-16. Gantt also claims that the denial of a promotion and refusal to hire was in retaliation for his participation in a coworker's complaint before the Equal Employment Opportunity Commission ("EEOC"). Id. ¶¶ 10, 21.

On June 22, 2009, Gantt filed a Formal Complaint of Employment Discrimination alleging discrimination and retaliation based on the rescission of his promotion and position. Mem. P. & A. Supp. Def.'s Mot. Dismiss or for Summ. J. at 1 [Docket Entry 3] ("Def.'s Mot. Summ. J."). On July 17, 2009, the Secretary dismissed Gantt's complaint, having concluded that it involved security clearance determinations that could not be reviewed through the EEOC complaint process. See Dismissal of Formal Complaint for Discrimination, Def.'s Mot. Summ. J., Ex. 2.  On the same day, the Secretary faxed a copy of the Final Agency Decision ("FAD") to Gantt's listed representative, attorney Clarissa Edwards.[1] Id. Gantt received a copy of the FAD by

---

[1] The documents in the record refer to "Clarissa Thomas Edwards" or some variation thereof, without any consistency.  Because many of the relevant documents discussed herein refer to Gantt's attorney as "Clarissa Edwards," the Court will do the same.

certified mail on July 21, 2009. Gantt Aff. ¶ 7. The FAD stated that Gantt could appeal to the EEOC within thirty days of receipt of the decision or could file a civil action within ninety days of receipt of the decision. Gantt filed a Notice of Appeal with the EEOC on August 20, 2009, thirty-four days after Gantt's attorney received the FAD. Def.'s Mot. Summ. J. at 2.

On April 28, 2011, the EEOC dismissed the appeal as untimely, noting that Gantt failed to provide an adequate justification for extending the time limit for filing his appeal. Def.'s Mot. Summ. J., Ex. 7. Gantt then filed this action alleging that the Secretary engaged in discriminatory and retaliatory employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. The Secretary has now filed a motion to dismiss or for summary judgment, on the basis that Gantt has failed to exhaust his administrative remedies. He also argues that equitable tolling of the appeals deadline is unwarranted. Gantt opposes this motion, arguing that dismissal of the appeal below was improper because the appeal was in fact timely filed and, in any event, that the faxed FAD was improperly received by his attorney because it was illegible.

## II.    Standard of Review

Because the parties have presented -- and the Court has considered -- matters outside the pleadings, the Court will analyze the Secretary's motion as one for summary judgment. See Fed. R. Civ. P. 12(d).  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson, 477 U.S. at 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  The party opposing a motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322.  Moreover, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  Summary judgment, then, is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

**III.    Discussion**

A federal employee bringing a lawsuit under Title VII of the Civil Rights Act is generally required to exhaust his administrative remedies. See Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); see also Hines v. Bair, 594 F. Supp. 2d 17, 22 (D.D.C. 2009) ("Before filing a Title VII suit [against a federal agency], a federal employee must timely pursue [his] administrative remedies, following the requirements set forth in 29 C.F.R. § 1614."). Failure to do so will ordinarily bar a judicial remedy. The exhaustion requirement provides the EEOC the opportunity to investigate and "serves the important purpose of giving the charged party notice of the claim and 'narrow[ing] the issue for prompt adjudication and decision.'" Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir.1995) (quoting Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 472 n.325 (D.C. Cir.1976)).

Gantt had two appeal choices following the receipt of a FAD. Within thirty days of receipt, he could have appealed the decision to the EEOC Office of Federal Operations. If a complainant is represented by an attorney, the thirty day time period is measured from the attorney's receipt of the FAD. See 29 C.F.R. § 1614.402(a). "If the complainant is represented by an attorney of record, then the [thirty] day time period . . . shall be calculated from the receipt of the required document by the attorney." 29 C.F.R. § 1614.402(b). Alternatively, a complainant can file a civil action within ninety days of receipt of the FAD. See 29 C.F.R. § 1614.407(a). "If a plaintiff misses both deadlines, his complaint is time-barred and subject to dismissal." Miller v. Rosenker, 578 F. Supp. 2d 67, 70 (D.D.C. 2008). More than ninety days elapsed in this case between Gantt's receipt of the FAD and the filing of this complaint. "Therefore, for the Plaintiff to have timely filed his claim in federal court, his administrative appeal with the EEOC must have been timely filed." Id.

    **A.**    **Exhaustion**

Gantt appealed the FAD thirty-four days after his attorney was faxed the notice, but thirty days after he received the letter himself by certified mail. Gantt claims that the relevant time period should be calculated from his receipt of the FAD, because either (1) his attorney was not representing him at the time that the FAD was issued or (2) the facsimile sent to his attorney was illegible upon receipt and so it should not constitute notice. Pl.'s Opp'n to Def.'s Mot. Summ. J. at 6 [Docket Entry 5] ("Pl.'s Opp'n").

*1. Representation and Notice*

Gantt contends that because his attorney, Clarissa Edwards, never filed an Entry of Appearance, she was not his "attorney of record" at the time the FAD was issued and, hence, calculating the receipt of the FAD from the date she received the facsimile is improper. Id. However, as the Secretary rightly points out, Gantt does not cite to any rule or regulation requiring that an attorney of record file a formal Entry of Appearance. See Def.'s Reply to Pl.'s Opp'n at 3 [Docket Entry 6] ("Reply"). Indeed, a formal Entry of Appearance is not necessary by a representative for a EEO complainant; only written notice is required. See 29 C.F.R. § 1614.605. Gantt provided the required written notice when he indicated that he was represented by Edwards, both on his Formal Complaint of Employment Discrimination and on his Notice of Appeal to the Equal Employment Opportunity Commission. See Def.'s Mot. Summ. J., Ex. 1, Ex. 3 [Docket Entry 3-1]. On both forms he provided her name, address, and phone number. In response to the question "Is your representative an attorney?" on the Formal Complaint, he checked "yes". Id., Ex. 1. On the Notice of Appeal, Gantt filled out the section marked "Attorney name" with Edwards's name. Id., Ex. 3.

Gantt also claims that Edwards told the EEOC that she had not been "retained" by him

for these matters and so should not have been considered his attorney of record. Pl.'s Opp'n at 5. In support of this contention, Gantt points to an email sent by Edwards to Ray Goldstein, Counsel for the Navy. Id., Ex. 8.  However, this email does not support Gantt's argument that he did not retain Edwards for the EEOC proceedings; indeed, in this email, Edwards discusses filing motions and makes reference to emailing and mailing information to opposing counsel. Id. Moreover, while Edwards mentions difficulties with her fax machine, she does not claim in the email that she failed to receive any faxes. Id.

The record is replete with instances where Edwards held herself out as Gantt's representative both in early attempts to resolve his dispute informally, and throughout the EEO process. In a letter dated April 4, 2008, and on letterhead from "The Law Office of C. Thomas, Chartered," Edwards wrote: "Please note that our office represents Iben Gant [sic] regarding his grievance." See Pl.'s Opp'n, Ex. 1.  Later, Edwards sent another letter on the same letterhead, titled "RE: Rescinding of Promotion" and stating, "Please note that our office represents Iben Gant [sic]." Letter from Clarissa Edwards, Esq., to Captain Paul Stewart, Commanding Officer of the Naval Research Laboratory (March 10, 2009) [Docket Entry 3-5].  Edwards participated in mediations, see "EEO ADR Meeting Points" [Docket Entry 3-7], and attended Gantt's final EEO Counselor interview, see Def.'s Mot. Summ. J., EEO Counselor's Inquiry Report [Docket Entry 3-8].  And although Gantt did sign the Formal Complaint himself, he listed Edwards as his attorney on that document. See id., Ex. 1.

There is no evidence that Gantt at any time sent written notice, as required, either appointing new representation or removing Edwards as his representative. See 29 C.F.R. § 1614.605(d) ("Unless the complainant *states otherwise in writing*, after the agency has received written notice of the name, address and telephone number of a representative for the

7

complainant, all official correspondence shall be with the representative with copies to the complainant.") (emphasis added).  Gantt only indicates in an email that he has designated Doryce Moore as an "addition[al] representative," Pl.'s Opp'n, Ex. 4, although Edwards continued to be listed as his designated representative, included on correspondence, and involved in setting schedules and filing briefs.

Gantt does contend in an affidavit that he "originally retained" counsel "to represent [him] in a grievance and several issues that [he] had against the agency." Gantt Aff. ¶ 1.  Gantt does not indicate what these "several issues" could be, but as previously noted, both Edwards and Gantt held Edwards out as Gantt's representative and attorney during the grievance, but also throughout the EEO proceedings.  Gantt stated that he originally met with the EEO officer himself, and filed the informal and formal complaints on his own.  But Gantt listed Edwards as his attorney, and she attended Gantt's final meeting with his EEO counselor.  Gantt also cryptically states that he "did retain counsel for the same until sometime on or about when the Motion to Dismiss had been filed." Gantt Aff. ¶ 6.  It is unclear what "Motion to Dismiss" Gantt's affidavit references, but the Court construes it as referring to the underlying EEOC proceedings and the "Agency Response Brief in Support of Dismissal," filed by Ray Goldstein, counsel for the Naval District of Washington, in response to Gantt's appeal of the FAD.[2]  See Def.'s Mot. Summ. J., Ex. 4.

It appears that Gantt, through his affidavit, attempts to raise a dispute as to whether

---

[2] The Court draws this inference in part because it is most favorable to plaintiff. Further, Gantt notes that: "After the motion to dismissal (sic) was filed by defendant, counsel was retained by Iben Gant to represent him in the instant formal matter." Pl.'s Opp'n at 5. While "the instant formal matter" would seem to refer to this civil suit, that would be an illogical reading of the facts.  Gantt's counsel submitted and signed Gantt's Complaint, and so Gantt must have retained her prior to the Secretary's motion to dismiss in this civil action. The phrase "motion to dismissal" instead supports the reading that Gantt refers to the "Agency Response Brief in Support of Dismissal" filed in response to Gantt's EEOC appeal.

Edwards had been retained for the EEOC proceedings.  However, a review of the record indicates that a "genuine dispute" over this fact is completely lacking.  In order to defeat summary judgment, the dispute over a material fact must be "genuine"; a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Galvin v. Eli Lilly and Co., 488 F.3d 1026, 1031 (D.C. Cir. 2007) (quoting Anderson, 477 U.S. at 248 (1986)).  A non-movant cannot create such a factual dispute by asking the court to draw inferences contrary to the evidence. Matsushita Elec. Indus. Co., 475 U.S. at 586–87.  Based on the overwhelming evidence in the record, there is no genuine dispute of fact such that a reasonable fact finder could conclude that Edwards was not representing Gantt when the FAD was delivered.  Notwithstanding Gantt's affidavit to the contrary -- which -- even when construed in the most favorable light to Gantt, remains vague and unclear, Gantt does not dispute that he had designated Edwards as his attorney and that she was his attorney at the time the FAD was received.  All other evidence indicates that Edwards was acting as Gantt's attorney both prior to and throughout the EEOC proceedings. See Bant v. Bd. of Trs. of Univ. of Ill., No. 05-2132, 2006 WL 3386732 at *4 (C.D. Ill. Nov. 21, 2006) (noting in a similar dispute that the Court need not "determine the parameters of the relationship between [the attorney] and Plaintiff," only that the attorney "was Plaintiff's 'designated attorney' for the purposes of notification").

   Whether Gantt had a retainer agreement or other fee arrangement with Edwards is not at issue.  Here, the only relevant question in measuring the timeliness of Gantt's appeal is whether he designated Edwards as his representative, indicating that she should receive notice on his behalf.  Although the Secretary also mailed Gantt a copy of the FAD, that act is not evidence  -- as Gantt suggests -- that the Secretary believed Gantt was representing himself, but instead indicates that the agency was complying with its own notification requirements. See 29 C.F.R.

§ 1614.605(d) ("[S]ervice of all official correspondence shall be made on the attorney and the complainant . . . .")

        *2. Adequacy of Notice*

Even assuming that Edwards was the proper recipient of the FAD for measuring the timeliness of appeal, Gantt argues that the faxed FAD should not constitute sufficient notice or service because "most of the pages were [not] legible and not visible." Pl.'s Opp'n at 6. He does not contend that Edwards failed to receive the fax or that she did not know its subject matter. To the contrary, Gantt concedes that Edwards received the fax but argues, without any substantiation, that the fax was "not legible and had to be discarded." Pl.'s Opp'n at 6.[3] Among Gantt's exhibits is a fax transmission, submitted as an intended exemplar of the quality of faxes from Edwards's fax machine. See Pl.'s Opp'n, Ex. 9.

The initial burden rests with the Secretary to provide proof of service. See Celotex, 477 U.S. at 322 (noting that the party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact). The Secretary points to the fax confirmation page to demonstrate that the fax was successfully transmitted on July 17. Def.'s Mot. Summ. J., Ex. 2. This confirmation strongly implies that the document at issue was likely received, as the fax confirmation cover page states: "Here is the letter dismissing Iben Gantt's formal complaint of discrimination." Id.; see also Laouini v. CLM Freight Lines, Inc., 586 F.3d 473, 478–79 (7th Cir. 2009) (observing that a fax confirmation is "strong evidence of receipt"). However, more significantly, Gantt does not dispute that his attorney received the fax, and does not dispute that the subject matter of the fax was clear, even though he claims that there were

---

    [3] The Secretary notes that earlier in the appeal process Gantt claimed that only "several pages" were not legible, but he now claims it is "most" pages. See Reply at 7; Complainant's Br. in Supp. of Appeal at 3 [Docket Entry 3-3].

pages from the fax that were either unclear or illegible and that the fax was ultimately discarded. See Pl.'s Opp'n at 6.

Gantt's "example" of an illegibly received fax provides him no help. Assuming that the discarded fax was of the same quality as the one submitted as an exhibit to Gantt's pleadings, the fax -- while admittedly not the best quality -- is still readable and the character of the message unambiguous. Cf. Moeslein v. F.A.A., 331 F. App'x 752, 754 (D.C. Cir. 2009) (noting that despite typographical errors in his name and certificate number, plaintiff had notice that the complaint was directed at him); Lucht v. Encompass Corp., 491 F. Supp. 2d 856, 865 (S.D. Iowa 2007) (noting that while typographical errors in the EEOC notice were "puzzling," the document as a whole was sufficiently coherent to give notice despite claimant's assertion that she did not understand what the notice meant).

The evidence in the record indicates that the parties communicated by fax a great deal in discussing Gantt's grievance. See Pl.'s Opp'n, Ex. 1 (April 4, 2008 letter from Edwards regarding Gantt's grievance said to be transmitted "by fax" to the opposing parties); Pl.'s Opp'n, Ex. 2 (fax cover page and the first page of a letter sent on March 13, 2009 from the Department of the Navy to Edwards); Def.'s Mot. Summ. J., Ex. 6-1 [Docket Entry 3-4] (fax cover pages showing information received by the Secretary on May 4, 2009, from The Law Office of C. Thomas, regarding Gantt); Def.'s Mot. Summ. J., Ex. 10 [Docket Entry 3-7] (document titled "EEO ADR Meeting Points," faxed April 28, 2009 from the Law Office of C. Thomas). The only communication Gantt has brought forth regarding possible problems with the fax machine was a September 22, 2009 email between Edwards and Goldstein, noting problems with Edwards' fax machine. See Pl.'s Opp'n, Ex. 8. That was after the July 17, 2009 transmission of the FAD, and no evidence in the record indicates, nor has Gantt argued, that the September 2009 problems with

the fax machine existed in July 2009. Indeed, before the receipt of the FAD, all evidence in the record indicates that communication by fax was acceptable and unproblematic. Accordingly, this Court finds that there is no genuine dispute that Edwards was Gantt's attorney on July 17, 2009, that the time limit for filing an appeal began when she received the FAD by fax on July 17, 2009, and that the faxed FAD constituted sufficient notice.

### B. Equitable Tolling

Although Gantt does not explicitly argue that equitable tolling should apply, his pleadings suggest an attempt to make such a claim.[4] Gantt argues that even if this Court were to find that the appeal was untimely, the Court should nonetheless allow the action to proceed because Gantt made a "diligent effort to comply with the mailing requirement." Pl.'s Opp'n at 8–9. The Secretary maintains that equitable tolling is unwarranted in this situation. The Court agrees with the Secretary.

The doctrine of equitable tolling customarily applies to filing requirements in civil lawsuits between private litigants. See Honda v. Clark, 386 U.S. 484, 501 (1967) (discussing the traditional equitable tolling principle) . The same standard applies to statutory time limits in lawsuits against employers under Title VII. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393–94 (1982); Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 95–96 (1990). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "The court's equitable power to toll the

---

[4] Gantt points the Court to Bowden v. United States, 106 F.3d 433 (D.C. Cir 1997), for this principle. Pl.'s Opp'n at 8. Bowden examined the defenses of equitable tolling and waiver. Because the facts of this case do not lend themselves to a discussion of waiver, the Court will assume Gantt wishes the Court to consider equitable tolling.

statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988).

Equitable tolling has been applied in limited situations, such as where a party, particularly one proceeding pro se, was misled about the running of a limitations period. See Gray v. Phillips Petroleum Co., 858 F.2d 610, 616 (10th Cir. 1988) (finding equitable tolling warranted when employee was misled into a late filing by the actions of an adversary); Jarrell v. U.S. Postal Service, 753 F.2d 1088, 1092 (D.C. Cir. 1985) (noting that the timely filing requirement may be tolled due to justifiable reliance on the advice of a government officer); see also Bowden, 106 F.3d at 438.  Courts have also granted equitable tolling when a complainant timely files a technically deficient petition. See Mondy, 845 F.2d at 1057 (permitting equitable tolling when plaintiff, bringing suit in forma pauperis, named the wrong government official in his original, timely-filed petition).  However, the courts are "less forgiving when the claimant has failed to exercise due diligence in preserving his legal rights." Irwin, 498 U.S. at 96. In Irwin, the petitioner requested equitable tolling because his attorney was out of the country at the time the EEOC notice was received by his office. Id. at 91. The Supreme Court found that this was, at best, a "garden variety claim of excusable neglect" and equitable tolling did not extend to such circumstances. Id. at 96.

So, too, the facts in this case support at most a case of excusable neglect.  Gantt does not claim, nor is there any evidence in the record, that his attorney failed to receive the document or that the nature of the document was unknown to her.  While Edwards may have preferred a more easily readable copy, that does not mean that she failed to receive notice in her office on July 17. Cf. Rowe v. Merit Sys. Prot. Bd., 802 F.2d 434, 437 (Fed. Cir. 1986) (finding that although the

client relied on his attorney's erroneous advice regarding the filing time period, strict adherence to the time limit was proper).  Having appointed an attorney as a representative, the claimant is "bound by the consequences of his representative's conduct, which includes both [her] acts and omissions." Id.  The Court may have some sympathy for Gantt, but it concludes that he has not demonstrated any extraordinary circumstances that stood in the way of him exercising his rights.  Accordingly, the Court declines to apply equitable tolling to Gantt's untimely appeal.

## IV.     Conclusion

Because there is no genuine factual dispute that Edwards was Gantt's attorney and representative at the time the FAD was delivered, and that Gantt received proper notice and service of the FAD, the time period for Gantt's appeal must be calculated from the receipt of the FAD by his counsel on July 17, 2009.  Hence, Gantt's administrative appeal was untimely and Gantt has failed to exhaust his administrative remedies.   Accordingly, the Court will grant the Secretary's motion for summary judgment.  A separate order accompanies this memorandum opinion.


**SO ORDERED**.

                                                          /s
                                              JOHN D. BATES
                                              United States District Judge

Dated: April 30, 2012